

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00380-CR

———————————————

JEFFERY LYNN HOOVER, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 2
Tarrant County, Texas
Trial Court No. 1027051D

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

In a single issue, Jeffery Lynn Hoover appeals from the trial court's order revoking his deferred adjudication community supervision. We affirm.

## Background

In 2008, appellant pleaded guilty to aggravated sexual assault of a child under fourteen. In accordance with appellant's plea bargain with the State, the trial court deferred a finding of guilt and placed appellant on community supervision. The trial court included as conditions of community supervision that appellant—among other conditions—(1) comply with all of the State's sex offender registration procedures, (2) stay farther than 1,000 feet from places children commonly gather, (3) not accept employment that would bring him into direct contact with a child without prior court or probation officer approval, (4) not have contact with minors without the presence of a pre-approved chaperone, (5) inform his community supervision officer about any email address he acquired or used while on community supervision, (6) not operate a computer at any location without "first installing software that is designed to prohibit the viewing and receipt of images or text that is sexually oriented in nature,"[1] and (7) assume responsibility for his offense. Appellant's probation was transferred to Gregg County, Texas, where he lived.

---

[1]The conditions further required the software to be approved by the probation department.

In 2017, the State filed a petition to adjudicate appellant guilty of the original offense, alleging that he had violated all of the above conditions through his employment at Barnwell Mountain Recreation Area beginning in December 2015. Appellant pleaded not true to the petition's allegations, but after a hearing, the trial court found that he had violated all of the community supervision conditions as alleged by the State. The trial court adjudicated appellant guilty of the original offense and assessed appellant's punishment at fifteen years' confinement.

In a single issue on appeal, appellant claims that the State failed to prove by a preponderance of the evidence that he violated any of his conditions of community supervision.

**Standard of Review**

In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated at least one of the terms and conditions of community supervision. *Bryant v. State*, 391 S.W.3d 86, 93 (Tex. Crim. App. 2012); *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006). In this context, "a preponderance of the evidence" means "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation." *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013). The trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling. *Id.* at 865; *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). If the

3

State fails to meet its burden of proof, the trial court abuses its discretion by revoking the community supervision. *Cardona*, 665 S.W.2d at 493–94.

## Facts Adduced at Hearing

The evidence showed that appellant first started working at Barnwell cleaning cabins; eventually, he moved into the main office and began using the main office computer.

A Tarrant County probation officer testified that she was present when appellant was originally placed on probation. She informed him of his probation conditions, including the ones the State later alleged appellant violated. Appellant signed the conditions. On cross-examination, the probation officer testified that the supervision officer is responsible for verifying whether a place of employment is acceptable in light of a person's probation conditions before giving approval for the person to work there.

James Gillen, a Gladewater police detective, took over handling appellant's sex offender registration in September 2017. Appellant performed his annual, in-person registration on September 12, 2017, with Gillen and filled out all of the required forms. On the back of the form, appellant wrote an email address for his employer, Barnwell: office@BarnwellMountainRA. Appellant had not disclosed this email address during his last registration in September 2016.

Gillen testified that chapter 62 of the code of criminal procedure requires a sex offender to update an email address within 7 days of any change. *See* Tex. Code Crim.

4

Proc. Ann. art. 62.0551 (requiring a person required to register as a sex offender to report "changes [to] any online identifier included on the person's registration form or . . . any new online identifier not already included on the person's registration form, . . . not later than the later of the seventh day after the change or establishment or the first date the applicable authority by policy allows the person to report"). Gillen admitted that he did not know when appellant had acquired the email address he wrote on the form in September 2017.

Kali Faber, appellant's Gregg County probation officer, testified that she went over appellant's probation conditions with him in April or May 2012. She testified that she had approved appellant's employment at Barnwell after being "advised that it was primarily for adults" and was "an off road . . . 4 x 4 Jeep/RV place." Faber found out later, after speaking to the director of Barnwell, Ed Teal, in October 2017, "that it was a family event, fun event place." At that point, she notified Tarrant County that appellant was working in a child safety zone.

Faber admitted that she does not take a probationer at face value in determining whether a location is within a child safety zone; she had attempted to contact Barnwell but could not reach anyone there. Additionally, she had searched it online and confirmed that "it's for 18 and over," but admitted that guests "are allowed to bring their children."

Faber said appellant's employment at Barnwell was not a problem at first because his initial job was cleaning the cabins during the day but that it became a

5

problem when his job duties changed to work in the office because he could have had unsupervised contact with children. Faber said that she had approved appellant's office position at Barnwell because he had misrepresented to her that all children at the facility would be supervised by their parents at all times. Although on cross-examination Faber testified that she could not say whether appellant actually had been in unsupervised contact with children at Barnwell, on redirect she appeared to say that a September 29, 2017 email appellant sent her indicated that he came into contact with "maybe five kids a weekend."

But Faber also testified that when she talked to appellant's former boss Teal in October 2017, she found out that appellant had been using an office email at Barnwell that she did not know about and that, according to her, had not been registered with the Department of Public Safety or the Gladewater police. She identified the address as "Office@BarnwellMountain.com." Appellant admitted to Faber that he had not installed any monitoring software on the office computer but he "thought Google may have had its own blocking software." Faber had allowed appellant to use his personal laptop with K9 and Net Nanny blocking software installed. According to Faber, Teal confirmed that no monitoring software had been installed on the office computers.

The trial court admitted State's Exhibit 4 into evidence, a statement appellant wrote for Faber in her office. In it, appellant admitted failing to install "filtering software" on his office computer while working at Barnwell, failing to report the

6

Barnwell email account that he began using "in late spring or early summer of 2017" in accordance with his new work task of monitoring reservation emails, and failing to be honest with his employer about the details of his offense.

Appellant's sex-offender-treatment therapist testified that after appellant was placed on her caseload in 2015, she had to review his case and re-evaluate him. Because some of his answers to the evaluation concerned her and because the prior therapist had not completed some state requirements, she asked appellant to come back into active treatment.

According to the therapist, appellant had represented that his problems at Barnwell had started when someone had discovered he was a sex offender and complained. But she found out from Faber that was not what happened, at which point she said, "[W]e confronted him [and] he was required to write a letter to his employer explaining that . . . he had misrepresented himself." This letter is State's Exhibit 4. Because appellant continued to minimize the offense after writing the letter, "he had to be coached through how to . . . make a disclosure." She said that it was common in Gregg County to obtain such a letter upon a violation of probation conditions and that the letters were provided to the judges for the purpose of "accepting culpability" and "moving forward." The therapist did not unsuccessfully discharge appellant, but she said he would not have been discharged successfully if this proceeding had not intervened. She also said that appellant told her he had repeatedly come into contact with children at Barnwell.

7

Teal testified on appellant's behalf. He testified that Barnwell is an "off-road park" where people come to ride off-road vehicles. It is open to the public. Appellant told Teal when he applied for the cleaning job about his sex-offender status, and the Board of Directors approved the employment.

"At some point," appellant's duties changed, and he began managing the office, "work[ing] the desk and [taking] care of e-mail and pretty much work[ing] anybody that came in." Photographs of the office showed a large countertop between where appellant would stand and where the public would come inside. The office has surveillance cameras from which the computer monitors are visible.

According to Teal, anyone working in the office had access to the email address and he accessed it through his phone. He saw every email that was sent and received. Appellant did not have his own email address. Teal testified that Barnwell had a monitoring software called TeamViewer installed on the office computer, from which he and the IT employee could view and take over the computer at any time via remote access.

On cross-examination, Teal admitted that appellant had been using the office email since 2015. When asked if there were "ever occasions where a kid might walk in without a parent," he answered, "I'm sure there was [sic]."

**Evidence Sufficient to Prove at Least One Violation**

Although the trial court found that appellant had violated all of the conditions alleged by the State in its petition to adjudicate, the evidence need only support one violation to uphold the trial court's judgment. *See Hacker*, 389 S.W.3d at 864–65.

Here, the evidence showed that appellant used the office computer at Barnwell from December 2015 to at least October 2017 and that although the computer may have had a type of monitoring software installed, it did not have "software that is designed *to prohibit* the viewing and receipt of images or text that is sexually oriented in nature." [Emphasis added.] Although appellant argues that the TeamViewer software Teal testified had been installed "assured that [a]ppellant was not viewing or in receipt of images or text that is sexually oriented in nature," the probation condition speaks to software designed to prohibit viewing in the first place, not to software enabling someone to catch impermissible viewing after the fact. *See Prohibit*, Black's Law Dictionary (10th ed. 2014) ("To prevent, preclude, or seriously hinder"); Webster's Third New Int'l Dictionary 1813 ("To prevent from doing or accomplishing something," or "to make impossible"); *cf. Anthony v. State*, 962 S.W.2d 242, 246 (Tex. App.—Fort Worth 1998, no pet.) (op. on PDR) (requiring complaint that condition was vague or confusing to be raised on direct appeal at time of imposition). And appellant admitted in State's Exhibit 4 that he had not been diligent in ensuring the proper monitoring software—which he described as "filtering software"—had been installed.

Finally, the evidence shows that Faber did not know that appellant had been accessing the office email for work, and although appellant's prior probation officer had approved K9 and NetNanny software, Faber testified that Gregg County used a more robust software, Remotecom. There is no evidence that any of appellant's probation officers had approved TeamViewer.

Accordingly, we hold that a preponderance of the evidence supports the trial court's determination that appellant violated at least one condition of his community supervision as alleged. We overrule appellant's sole issue.

## Conclusion

Because we have overruled appellant's only appellate issue, we affirm the trial court's judgment.

/s/ Wade Birdwell
Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 27, 2019

10